**David HOLUBEC and Mary Holubec, Petitioners,**

v.

**Carl BRANDENBERGER, Individually and as Next Friend of Payton Brandenberger and Carson Brandenberger, Kathy Brandenberger, William R. Lee, Laverne Lee, and R & J Livestock Company and Batesville Farming Company, Respondents.**

No. 01–1214.

Supreme Court of Texas.

Argued Dec. 4, 2002.

Decided May 22, 2003.

Rehearing Denied Aug. 21, 2003.

Ed Small, Matt Dow, Zachary Stone Brady, Jackson Walker LLP, Austin, Terry R. Norman, Kyle Rodney Sikes, Brady, for petitioners.

Jack W. Lee, Mason, Richard T. Miller, Law Office of Richard T. Miller, San Saba, for respondents.

Chief Justice PHILLIPS delivered the Opinion of the Court.

In this appeal, we explore the contours of the Right to Farm Act's affirmative defense against claims that agricultural operations are a nuisance. The Act provides that "[n]o nuisance action may be brought against an agricultural operation" that has been in lawful operation for more than a year "if the conditions or circumstances complained of as constituting the basis for the nuisance action have existed substantially unchanged since the established date of operation." TEX. AGRIC. CODE § 251.004(a). The petitioners here are agricultural operators who complain that a defective jury charge denied them the protection of this defense. They also complain that the court of appeals erred in holding that they waived their complaints of charge error. They finally complain that no evidence or pleadings support the permanent injunction issued by the trial court and affirmed by the court of appeals. Because we conclude that the jury charge in this case is erroneous and that this error is harmful and has been preserved, we reverse the court of appeals' judgment, dissolve the injunction, and remand the case to the trial court for further proceedings.

I

David and Mary Holubec own a 450–acre ranch in McCulloch County, Texas, on which they have conducted a sheep operation for well over a decade. In addition to this ranch, they own or lease an additional 4,500 acres on which they farm and raise sheep. The remainder of their livelihood comes from operating a fertilizer and seed business.

Since 1994, Robin Lee and his mother Laverne have owned the property to the south and west of the Holubec ranch. Near the eastern boundary of the Lees' property is the home of their ranch foreman, Carl Brandenberger, who has lived there with his wife and children since the Lees purchased the property.

At the end of 1996, the Holubecs began clearing land to construct a ten-acre feedlot on the western boundary of their ranch. The new feedlot contained twenty sheep pens and other improvements to accommodate about 6000 lambs. The Holubecs began using the new feedlot in March 1997, by which time most of the improvements had been completed. The nearest pen is about 160 feet from the Brandenbergers' home.

The feedlot's ten acres were taken from a twenty-acre area of fenced pasture the Holubecs had used since 1987 to wean lambs and fatten them for sale. Before being cleared, this pasture was thick with mesquite and brush, although lanes had been cut to permit the sheep to reach feeders placed on the property. While the Holubecs kept no written records of how many sheep they fed on this tract, they testified variously that it was as few as a thousand to as many as three thousand. After the feedlot was completed, however, the numbers definitely increased. Within a year of completing the improvements, the Holubecs had about 5800 sheep on the ten-acre feedlot.

By August 1997, the Brandenbergers began noticing foul odors. About this same time, they also began experiencing swarms of flies, increased dust, and noise from bleating lambs being weaned from their mothers. Robin Lee complained to the Holubecs about these problems to no avail. In February 1998, the Holubecs added elevated lights to the feedlot to permit night work. The Brandenbergers

claim that these lights illuminated their home and disturbed their sleep.

On July 31, 1998, the Brandenbergers and Lees filed suit, complaining that the foul odors, flies, dust, noise, and light constituted a nuisance. The Lees sought damages for the diminished market value of their property, while the Brandenbergers sought damages for their clean-up costs, medical expenses, and pain and suffering. Both families also sought permanent injunctive relief against the continued operation of the feedlot. The Holubecs denied all allegations and asserted section 251.004(a) of the Texas Agriculture Code as a bar to all the plaintiffs' claims. The trial court denied their motion for summary judgment on the statutory defense.

The case proceeded to trial before a jury, which found that the feedlot was a nuisance and that the Holubecs were negligent in its operation or construction. The jury awarded damages to the Lees for loss of market value to their ranch, but it awarded no personal damages to the Brandenbergers. After the verdict, the plaintiffs filed a motion for judgment, seeking injunctive relief rather than damages. The trial court signed a judgment conforming to this motion, granting only a permanent injunction which enjoined the Holubecs from:

1. Operating a sheep feedlot or stabling, confining, feeding or maintaining on the [450 acres] any animals in confinement areas that do not sustain such animals on the crops, vegetation, forage growth, or post harvest residues produced in such areas in the normal growing season;

2. Feeding hay or other feed within 1750 feet of the [Brandenbergers'] residence;

3. Weaning lambs or other livestock in areas within 1750 feet of the [Brandenbergers' residence] during the period of time that such livestock is bleating or bawling because of the weaning process;

4. Maintaining lights on the [450 acres] that shine directly on the [Brandenbergers'] property;

5. Disposing of dead animals on the [450 acres].

The injunction also directed the Holubecs to dismantle their feedlot and clean up the area. The Holubecs appealed, and the court of appeals affirmed the trial court's judgment. 58 S.W.3d 201. We granted the Holubecs' petition to consider how the Right to Farm Act applies to these facts.

II

In order "to conserve, protect, and encourage the development and improvement of [Texas] agricultural land for the production of food and other agricultural products," the Legislature passed the Right to Farm Act in 1981 "limiting the circumstances under which agricultural operations may be regulated or considered to be a nuisance." TEX. AGRIC. CODE § 251.001. To further this policy, the Legislature in section 251.004(a) of the Act shortened the period for bringing a nuisance action against an agricultural operation to one year. That section provides:

No nuisance action may be brought against an agricultural operation that has lawfully been in operation for one year or more prior to the date on which the action is brought, if the conditions or circumstances complained of as constituting the basis for the nuisance action have existed substantially unchanged since the established date of operation. This subsection does not restrict or impede the authority of this state to protect the public health, safety, and welfare or the authority of a municipality to enforce state law.

TEX. AGRIC. CODE § 251.004(a). The Act defines "agricultural operation" to include

"raising or keeping livestock." *Id.* § 251.002(1). The "established date of operation" means "the date on which an agricultural operation commenced operation." *Id.* § 251.003. If the "physical facilities of an agricultural operation are subsequently expanded," the expanded operation acquires "a separate and independent established date of operation," which is the date the expanded operation commences. *Id.* The commencement of an expanded operation, however, "does not divest the agricultural operation of a previously established date of operation." *Id.*

At different times in this litigation, the Holubecs took varying positions about when they commenced sheep feeding operations. In their original answer, the Holubecs maintained that they commenced operations in 1987 when they first began feeding sheep on the twenty acres. A few days before trial, however, they amended their pleadings to suggest a second commencement date, asserting that the nuisance action was barred because it had been filed "more than ten years after Defendants' operation was begun and more than one year after Defendants remodeled their physical facilities." By the charge conference, the Holubecs had concluded that their defense should be tied solely to the commencement of operations at the new feedlot in early 1997. While the new feedlot arguably used less acreage than before, it expanded the "physical facilities of the agricultural operation," TEX. AGRIC. CODE § 251.003, by adding twenty sheep pens and other improvements. The court of appeals concluded that March 19, 1997, was the undisputed date on which the Holubecs commenced operations at their new feedlot. 58 S.W.3d at 207.

### A

The parties' principal disagreement in this case is about how to calculate the statute's one-year bar. This disagreement is based on conflicting interpretations of the statute's proviso highlighted below:

> No nuisance action may be brought against an agricultural operation that has lawfully been in operation for one year or more prior to the date on which the action is brought, *if the conditions or circumstances complained of as constituting the basis for the nuisance action have existed substantially unchanged since the established date of operation.*

TEX. AGRIC. CODE § 251.004(a) (emphasis added).

The Holubecs argue that the "conditions or circumstances complained of as constituting the basis for the nuisance action" are the confinement of sheep in their newly constructed feeding facility, a condition that began in March 1997 and has existed substantially unchanged since then. They conclude that since the plaintiffs did not file suit until July 31, 1998, more than a year later, the plaintiffs' nuisance action is barred under section 251.004(a).

The Brandenbergers and Lees maintain that neither the Holubecs' new feeding facility nor the introduction of sheep into it in March 1997 are the "conditions or circumstances complained of as constituting the basis for the nuisance action." Rather, they complain about the odor, flies, dust, noise, and light which invaded their property no earlier than August 1997, less than one year before they filed suit. An entomologist testifying on their behalf explained that a feedlot without adequate sanitation would develop a fly and odor problem after several months of operation. By August 1997, but not before, the Brandenbergers and Lees say that the Holubecs' failure to clean rotting manure and moldy hay from the pens and to properly dispose of their dead animals caused the flies and odors. They further point out

that the lights that disturb the Brandenbergers' sleep were not installed until 1998, thus being clearly outside the statutory bar.

The Holubecs denied that their feeding facility produced either foul odors or flies. David Holubec testified that his feeding facility had a sweet organic smell like that of a nursery. Acknowledging that he expected about a two per cent sheep mortality rate, he nevertheless insisted that all dead sheep were promptly buried. And far from being a nuisance, he explained that the manure pack accumulating in the pens was in fact a benefit because it helped control the dust. In sum, Holubec concluded that his feeding facility was operated in a reasonably sanitary manner and was not the cause of the Brandenbergers' fly, dust or odor problems.

B

■■■ The parties' disagreement about the proviso's meaning also causes them to disagree about the nature of the statutory bar. The Holubecs maintain that section 251.004(a) is a one-year statute of repose, while the Brandenbergers and Lees maintain that it is merely a statute of limitations. While either statute sets deadlines for plaintiffs to file claims, the period set under a statute of repose is independent of the claim's accrual or discovery. *Trinity River Auth. v. URS Consultants*, 889 S.W.2d 259, 261 (Tex.1994); 2 ROY W. MCDONALD & ELAINE G. CARLSON, TEXAS CIVIL PRACTICE § 9.71 at 649 (2d ed.2002). Thus, statutes of repose not only cut off rights of action within a specified time after they accrue, but also they may even cut off rights of action before they accrue at all. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 654 n. 1 (Tex.1989) (per curiam).

■■■ The Brandenbergers and Lees counter that section 251.004(a) cannot be a statute of repose because its proviso precludes a nuisance action from being cut off before it accrues. A "nuisance" is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 461–62 (Tex.1993); *Burditt v. Swenson*, 17 Tex. 489, 503 (1856); *Maranatha Temple, Inc. v. Enter. Prods. Co.*, 893 S.W.2d 92, 98–99 (Tex.App.-Houston [1st Dist.] 1994, writ denied). Because there can be no nuisance without offending conditions, the Brandenbergers submit that there can be no bar to an action after the one-year period provided by section 251.004(a) unless the offending conditions commence simultaneously with the start of operations. Otherwise, the offending conditions "constituting the basis of for the nuisance action [will not] have existed substantially unchanged" since the commencement of operations.

■■■ The purpose of repose statutes is to give absolute protection to certain parties from the burden of indefinite potential liability. *See Sowders v. M.W. Kellogg Co.*, 663 S.W.2d 644, 647 (Tex.App.-Houston [1st Dist.] 1983, writ ref'd n.r.e.). Statutes of repose do not typically shorten an existing limitations period; instead, they fix an outer limit beyond which no action can be maintained. *See, e.g.*, TEX. CIV. PRAC. & REM.CODE § 16.008(a) (ten-year statute of repose for construction industry); *id.* § 16.011(a) (ten-year statute for surveyors); *id.* § 16.07 (five-year statute for public officials); *id.* § 16.012 (fifteen-year statute for certain products liability actions). Thus, if the one-year period prescribed in section 251.004(a) is a statute of repose, it is unique both because it is conditional and because it is so short.

According to the statute, the one-year bar applies on proof of two conditions: (1) the agricultural operation was in business lawfully for more than a year before the nuisance action was filed; and (2) the "conditions and circumstances complained of as constituting the basis for the nuisance action have existed substantially unchanged" since then. Legislative history suggests that this defense was provided in response to concern about "the state [ ] losing productive agricultural land due to nuisance suits filed by individuals and organizations who have moved next to preexisting and heretofore successful agricultural operations...." HOUSE COMM. ON AGRIC. & LIVESTOCK, Bill Analysis, Tex. S.B. 488, 67th Leg., R.S. (1981). In light of this history and the Act's stated purpose, we conclude that the defense in section 251.004(a) was intended to bar a nuisance action against a lawful agricultural operation one year after the commencement of the conditions or circumstances providing the basis for that action. Thus, under the Act it does not matter when the complaining party discovers the conditions or circumstances constituting the basis for the nuisance action. *Cf. Vann v. Bowie Sewerage Co.*, 127 Tex. 97, 90 S.W.2d 561, 563 (1936) (party who moves next to a nuisance, without knowledge of its existence, is not estopped to seek damages for personal injury). Instead, the relevant inquiry is whether the conditions or circumstances constituting the basis for the nuisance action have existed for more than a year.

### III

The court of appeals concluded that the Holubecs had not established their defense because they failed to obtain a jury finding meeting the requirements of section 251.004(a). 58 S.W.3d at 208. The Holubecs respond, however, that they were denied the opportunity to establish their defense because the trial court submitted the wrong question. The trial court submitted the statutory defense as follows:

QUESTION 8

Have the conditions or circumstances complained of as constituting the basis for the nuisance action ... remained substantially unchanged since December 31, 1986?

To this, the jury answered, "No." The Holubecs objected to the question, "particularly [to] the date on there of December 31, 1986," which was when the Holubecs first began feeding sheep on the unimproved twenty-acre tract. Instead, the Holubecs requested this version of the question:

Do you find that the agricultural operation of [the Holubecs] had been in operation and existed substantially unchanged since on or before July 30, 1997?

The trial court refused this question and overruled the Holubecs' objection.

The court of appeals concluded that the Holubecs' objection and tender did not preserve error. 58 S.W.3d at 209–10. The court observed that the Holubecs' "naked objection" failed to explain why July 30, 1997, was the correct date rather than December 31, 1986. *Id.* at 209. The court further observed that the Holubecs' requested question was not a substantially correct inquiry under the statute because it asked about "agricultural operations" rather than, as the statute required, the "conditions or circumstances complained of as constituting the basis for the nuisance action." *Id.* at 210.

The Holubecs respond that the trial court was well aware of the significance of the July date and their position because they had previously asserted the one-year statutory bar in a motion for summary judgment. The Holubecs concede that

their requested question may not have precisely tracked the statutory language, but they submit that any defect in their tendered question does not excuse the court's charge error. Had the trial court merely replaced the date in Jury Question 8 with "July 30, 1997," the Holubecs submit they would have no complaint. Instead, the Holubecs complain that they were denied their statutory defense by a defective question, proposed by their opponent and submitted over their objection.

We agree that Question 8 was a defective submission of the Holubecs' affirmative defense under section 251.004(a). As we have already concluded, the Legislature intended for this statute to protect agricultural operators from nuisance actions based on conditions or circumstances existing for more than a year before suit. The dispute in this case is over when these conditions or circumstances commenced. The Brandenbergers and Lees contend that they commenced in August 1997 at the earliest; while the Holubecs maintain that any basis for the plaintiffs' nuisance action existed before July 30, 1997, more than a year before suit was filed. Rather than submit that question to the jury, the trial court posed another: whether the conditions and circumstances constituting the basis for the nuisance action had remained substantially unchanged since the Holubecs first began feeding sheep on the unimproved pasture land in 1987. The issue submitted was not in dispute by the close of evidence and was no longer germane to whether the feedlot constituted a nuisance.

The Holubecs specifically objected to the date submission. Although their requested submission was not specifically tied to "the conditions or circumstances complained of as constituting the basis for the nuisance action", they plainly sought the submission of their statutory defense. *See*

*Southeastern Pipe Line Co. v. Tichacek,* 997 S.W.2d 166, 172 (Tex.1999) (one kind of defective question "plainly attempts to request a finding on a recognized cause of action, but does so improperly"). Because the question actually submitted was defective, however, the Holubecs did not have to submit their own substantially correct question. *See Religious of Sacred Heart v. City of Houston,* 836 S.W.2d 606, 613–14 (Tex.1992) (objection is proper method of preserving complaint about defective issue submission regardless of who has burden of proof). The Holubecs' objection was sufficient to preserve error. TEX. R. CIV. P. 274. They are entitled to a remand because the trial court did not fairly submit the factual issue that could have established their defense under the Right to Farm Act.

## IV

The Holubecs additionally complain that the trial court abused its discretion by granting injunctive relief because the jury's damages award provided the plaintiffs an adequate remedy at law. They argue further that the permanent injunction was an abuse of the trial court's discretion because the relief awarded went beyond that requested in the pleadings or supported by the evidence. The Holubecs argue that the permanent restrictions imposed on their ability to feed and maintain sheep elsewhere on their ranch is an unreasonable and arbitrary restraint unrelated to plaintiffs' nuisance complaint.

In general, a permanent injunction "must not grant relief which is not prayed for nor be more comprehensive or restrictive than justified by the pleadings, the evidence, and the usages of equity." 6 L. HAMILTON LOWE, TEXAS PRACTICE: REMEDIES § 244 at 237 (2d ed.1973). Nor should a decree of injunction be so broad as to enjoin a defendant from activities

which are a lawful and proper exercise of his rights. *Villalobos v. Holguin,* 146 Tex. 474, 208 S.W.2d 871, 875 (1948). Rather, "injunctions must be narrowly drawn and precise." *Brown v. Petrolite Corp.,* 965 F.2d 38, 51 (5th Cir.1992). We do not apply these principles to the injunction at bar because we have already determined that it must be vacated.

Because of the error in submitting the Holubecs' defense, the judgment of the court of appeals is reversed, and the case is remanded to the trial court for further proceedings.