NUMBER 13-05-120-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


CAL-CO GRAIN COMPANY, INC., 

WARREN WHATLEY, HAROLD L. EVANS, 

AND LESTER FRAZIER Appellants,



v.
 


RICHARD WHATLEY AND WIFE, GLENDA WHATLEY, Appellees.

 


On appeal from the County Court at Law of Calhoun County, Texas.


 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Castillo 


Memorandum Opinion by Chief Justice Valdez






 Appellees, Richard and Gloria Whatley, live across the highway from Cal-Co Grain
Co., Inc. ("Cal-Co"), a grain storage facility in Port Lavaca, Texas. Alleging that grain dust
from Cal-Co's operations was blown onto their property, appellees brought suit against
appellants, (1) Cal-Co, Warren Whatley, Harold L. Evans, and Lester Frazier, for breach of
contract, nuisance, and negligence. A jury found in favor of appellants and awarded
appellants $66,000.00 in attorney's fees and costs. The trial court's final judgment did not
award these fees and costs to appellants, but instead entered a take-nothing judgment
against all parties. Cal-Co requests that the Court reverse the judgment and render the
$66,000.00 in favor of appellants as found by the jury. We reverse and remand to the trial
court for entry of judgment in accordance with this opinion.

Background

 In 1985, Richard Whatley sold his interest in Cal-Co to Warren Whatley, Harold L.
Evans, and Lester Frazier. As part of the sale, the parties entered into a settlement
agreement whereby Cal-Co, Warren Whatley, Evans, Frazier, and Claude Nunley (2) settled
and compromised litigation between the parties then pending in the 135th Judicial District
Court of Calhoun County. In addition to other provisions, the settlement agreement
provided:

 [Appellants], as well as their successors and assigns, agree that any damage
resulting from trespass, nuisance, or any other form of cause of action,
whether sounding in tort, contract, or other legal basis, arising from the
operations of Cal-Co Grain Company, Inc. on or after August 1, 1985,
particularly including blowing dust being deposited upon the residence of
Richard E. Whatley and wife, Shirley Whatley, (3) shall not be released hereby,
and that [appellants] shall make every reasonable effort to prevent the
operations of the Cal-Co Grain facility from allowing or permitting, or causing
in any way whatsoever, any grain dust to be deposited or blown upon the
residence of Richard E. Whatley and wife, Shirley Whatley, and shall
particularly take all necessary percautions [sic] and efforts to cease activities
of the grain company during those periods of time when the wind at the grain
facility shall be blowing from a hearing [sic] 030 to 060 degrees true north. 
The purpose of this paragraph shall not be to create, nor increase or
decrease, any legal liability of [appellants], toward Richard E. Whatley and
wife, Shirley Whatley, but shall not simply serve as notice to all parties that
when the wind is blowing from the directions mentioned, and the grain
company activities are being carried out, that the probability of damage to the
residence of Richard E. Whatley and wife, Shirley Whatley exists. Further,
it is expressly agreed and understood that the foregoing is not to be
construed in any way as a stipulation or admission that Richard E. Whatley
and wife, Shirley Whatley have or will suffer any damage whatsoever arising
from the operations of Cal-Co Grain Company, Inc. on or after August 1,
1985. That should the said Richard E. Whatley and wife, Shirley Whatley
subsequently be of the opinion that they have been damaged by such
operations, it shall be incumbent upon said individuals to prove their cause
of action and damages in a court of competent jurisdiction.

 

 In 2001, appellees filed suit against Cal-Co claiming that Cal-Co breached the 1985
settlement agreement and that Cal-Co's operations constituted a nuisance. Appellees
complained that appellants allowed grain dust to be blown onto their residence. Cal-Co
counterclaimed for attorney's fees under section 251.004 of the Texas Agriculture Code
and section 38.001 of the Texas Civil Practice and Remedies Code. 

 The jury found that Cal-Co did not breach the 1985 settlement agreement. 
Specifically, the jury answered "No" to questions regarding (1) whether Cal-Co failed to
take every reasonable effort to prevent grain dust from being deposited at appellees'
residence; (2) whether Cal-Co failed to take all necessary precautions and efforts to cease
activities of the grain company during those periods of time when the wind at the grain
facility was blowing from a bearing of 030 to 060 degrees true north; and (3) whether Cal-Co caused a substantial interference with appellees using and enjoying their land which
proximately caused actual damages to appellees. The jury further found that Cal-Co was
engaged in agricultural operations. The jury awarded Cal-Co attorney's fees of $63,000,
court costs of $1,000, travel costs of $1,000, and incidental expenses of $1,000. 

 In contrast to the jury's findings, the trial court's final judgment provides, in part:

 THE COURT FINDS THAT the settlement agreement does not make
provisions concerning attorney fees to be awarded the prevailing party in
enforcing the agreement.


 THE COURT FINDS FURTHER THAT a compromise and settlement
agreement is distinguishable from a contract and that, therefore, Chapter 38
of CPRC does not apply in this case. (4)


 THE COURT FINDS FURTHER THAT the provision of the settlement
agreement allowing Richard E. Whatley and wife to bring suit is irreconcilable
with Section 251.004 of the Texas Agriculture Code and that the
Compromise Settlement Agreement and Release is to be given full force and
effect and shall prevail over Section 251.004 of the Texas Agriculture Code.


 IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT the
Defendants Cal-Co Grain Company, Inc., Warren Whatley, Harold L. Evans,
and Lester Frazier take nothing in their affirmative defense (5) against Plaintiffs
Richard Whatley and Glenda Whatley. 


 Costs of court are assessed against parties incurring same, for which
let execution issue if not timely paid.


Analysis

 In one issue, Cal-Co contends that the trial court erred as a matter of law by failing
to award it attorney's fees and expenses. Cal-Co argues that the 1985 settlement
agreement and section 251.004 of the agriculture code should be construed together. Cal-Co further argues that, to the extent that the 1985 agreement conflicts with the Texas
Agriculture Code, the code prevails. 

 In contrast, appellees contend that the agriculture code does not apply in this case
because Cal-Co is not a producer of food or other agricultural products. Appellees contend
that, as a grain elevator, Cal-Co is essentially only a middleman. 

 The Texas Legislature passed the Right to Farm Act in 1981 in order "to conserve,
protect, and encourage the development and improvement of its agricultural land for the
production of food and other agricultural products," and "limiting the circumstances under
which agricultural operations may be regulated or considered to be a Nuisance." Tex.
Agric. Code Ann. § 251.001 (Vernon 2004); see also Holubec v. Brandenberger, 111
S.W.3d 32, 35 (Tex. 2003). To further this policy, section 251.004(a) of the Act shortens
the period for bringing a nuisance action against an agricultural operation to one year. Tex.
Agric. Code Ann. § 251.004(a) (Vernon 2004); Holubec, 111 S.W.3d at 35. The defense
in Section 251.004(a) is intended to bar a nuisance action against a lawful agricultural
operation one year after the commencement of the conditions or circumstances providing
the basis for that action. Tex. Agric. Code Ann. § 251.004(a); Holubec, 111 S.W.3d at 34;
Aguilar v. Trujillo, 162 S.W.3d 839, 852 (Tex. App.-El Paso 2005, pet. denied).

 Section 251.004 of the agriculture code provides:

 (a) No nuisance action may be brought against an agricultural operation
that has lawfully been in operation for one year or more prior to the
date on which the action is brought, if the conditions or circumstances
complained of as constituting the basis for the nuisance action have
existed substantially unchanged since the established date of
operation. . . .


 (b) A person who brings a nuisance action for damages or injunctive
relief against an agricultural operation that has existed for one year or
more prior to the date that the action is instituted or who violates the
provisions of Subsection (a) of this section is liable to the agricultural
operator for all costs and expenses incurred in defense of the action,
including but not limited to attorney's fees, court costs, travel, and
other related incidental expenses incurred in the defense. 


 c) This section does not affect or defeat the right of any person to
recover for injuries or damages sustained because of an agricultural
operation that is conducted in violation of a federal, state, or local
statute or governmental requirement that applies to the agricultural
operation or portion of an agricultural operation. 


Tex. Agric. Code Ann. § 251.004 (Vernon 2004). The three elements of the code's statute
of repose are: that the alleged nuisance creator is an agricultural operation; that it was
lawfully operating for one year prior to suit; and that the conditions complained of existed
substantially unchanged since the established date of operation. See Tex. Agric. Code
Ann. § 251.004(a) (Vernon 2004); Barrera v. Hondo Creek Cattle Co., 132 S.W.3d 544,
548 (Tex. App.-Corpus Christi 2004, no pet.). The "established date of operation" means
"the date on which an agricultural operation commenced operation." Tex. Agric. Code
Ann. § 251.003 (Vernon 2004); Holubec, 111 S.W.3d at 36. If the "physical facilities of
an agricultural operation are subsequently expanded," the expanded operation acquires
"a separate and independent established date of operation," which is the date the
expanded operation commences. Tex. Agric. Code Ann. § 251.003 (Vernon 2004);
Holubec, 111 S.W.3d at 36. The commencement of an expanded operation, however,
"does not divest the agricultural operation of a previously established date of operation." 
Tex. Agric. Code Ann. § 251.003 (Vernon 2004); Holubec, 111 S.W.3d at 36.

 In the instant case, the parties stipulated at trial: (1) that the conditions that
appellees complained of were substantially unchanged for at least one year prior to
January 12, 2001, the date of suit, and (2) that Cal-Co had been lawfully in operation for
at least one year prior to January 12, 2001. Accordingly, the only issue remaining is
whether or not Cal-Co constituted an agricultural operation.

 At the time of suit and trial, an "agricultural operation" was defined as follows: 

 'Agricultural operation' includes but is not limited to the following activities:
cultivating the soil, producing crops for human food, animal feed, planting
seed, or fiber, floriculture; viticulture; horticulture; raising or keeping livestock
or poultry; and planting cover crops or leaving land idle for the purpose of
participating in any governmental program or normal crop or livestock
rotation procedure." 


Act of 1981, 67th Leg. P. 2595, ch. 693, § 21, 1981 Tex. Gen. Laws 2595 (amended 2005)
(current version at Tex. Agric. Code Ann. § 251.002(1) (Vernon Supp. 2005)). The code
contains three definitions for the term "agricultural product." Hendrickson v. Swyers, 9
S.W.3d 298, 301 n.2 (Tex. App.-San Antonio 1999, pet. denied). Section 52.002 defines
"agricultural products" as including " horticultural, viticultural, forestry, dairy, livestock,
poultry, and bee products and any farm and ranch product." Tex. Agric. Code Ann. §
52.002(1) (Vernon 2004). Section 53.001 defines "agricultural product" as meaning "farm,
orchard, or dairy products," specifically excluding livestock. Id. § 53.001(1) (Vernon 2004). 
Section 58.002 defines "agricultural product" as "an agricultural, horticultural, viticultural,
or vegetable product, bees, honey, fish or other seafood, planting seed, livestock, a
livestock product, a forestry product, poultry, or a poultry product, either in its natural or
processed state, that has been produced, processed, or otherwise had value added to it
in this state." Id. § 58.002(2) (Vernon 2004). 

 The goal of statutory construction is to give effect to the intent of the legislature.
Monsanto Co. v. Cornerstones Mun. Utility Dist., 865 S.W.2d 937, 939 (Tex. 1993). Here,
the legislature specified its intent in the code itself. Section 251.001 provides:

 It is the policy of this state to conserve, protect, and encourage the
development and improvement of its agricultural land for the production of
food and other agricultural products. It is the purpose of this chapter to
reduce the loss to the state of its agricultural resources by limiting the
circumstances under which agricultural operations may be regulated or
considered to be a nuisance.

 

Tex. Agric. Code Ann. § 251.001 (Vernon 2004). "Clearly, this language is directed
towards protecting farmers and ranchers who engage in activities that produce food."
Hendrickson v. Swyers, 9 S.W.3d 298, 300 (Tex. App.-San Antonio 1999, pet. denied).

 Cal-Co is a storage facility for grain. It loads, stores, and unloads milo and corn. 
Warren Whatley testified that Cal-Co "takes in grain and stores it for farmers" as part of the
"process" of getting grain from the fields "to humans and livestock." Harold Evans testified
that Cal-Co is "definitely" an agricultural operation because it handles farmers' and
ranchers' grain. According to witness Buster Nunley, Cal-Co is "a part of the process of
producing livestock feed" and "a part of that process of producing crops for animals-for
animal food." Cal-Co is a "distribution point" for grain.

 We conclude that Cal-Co constitutes an agricultural operation within the meaning
of the code. Accordingly, given the parties' stipulations, all three elements of the code's
statute of repose have been met.

 We next consider whether the settlement agreement affects application of the
agriculture code's statute of repose and award of attorney's fees. Unlike the trial court, we
do not conclude that the settlement agreement and section 251.004 are irreconcilable. 
The settlement agreement specifically provides, in part, that "The purpose of this
paragraph shall not be to create, nor increase or decrease, any legal liability of [appellants],
toward Richard E. Whatley and wife, Shirley Whatley." The agreement further provides
"That should the said Richard E. Whatley and wife, Shirley Whatley subsequently be of the
opinion that they have been damaged by such operations, it shall be incumbent upon said
individuals to prove their cause of action and damages in a court of competent jurisdiction." 
If we were to conclude that the settlement agreement precluded application of section
251.004 to the instant situation, it would effectively create liability on the part of appellants
where none would otherwise exist given the statute of repose. 

 We sustain appellants' sole issue. Because of our resolution of this issue, we need
not address appellees' cross-point. See Tex. R. App. P. 47.1.

Conclusion

 Given the foregoing, we reverse the trial court's judgment insofar as it fails to award
appellants attorney's fees and costs under section 251.004 of the agriculture code. We
remand this issue to the trial court for entry of judgment in accordance with this opinion.

 

 _______________________

 ROGELIO VALDEZ

 Chief Justice



Dissenting Memorandum Opinion by Justice Castillo.


Memorandum Opinion delivered and 

filed this the 24th day of August, 2006.
1. Appellants will be identified herein individually or jointly as "Cal-Co." 
2. Claude Nunley was not a party in the underlying cause and is not a party to this appeal.
3. The agreement specifically designated Shirley Whatley as Richard Whatley's wife. Richard Whatley
and Shirley Whatley later divorced and Richard Whatley married Glenda Whatley. 
4. Appellants do not challenge on appeal the trial court's finding that a compromise and settlement
agreement is distinguishable from a contract and, therefore, chapter 38 of the civil practice and remedies code
does not apply. Accordingly, the Court will not address the merits of this provision of the judgment. 
5. We assume that the trial court herein is referring to appellant's counterclaim for attorney's fees given
the "take-nothing" language in the judgment. Neither party disputes this characterization of appellant's
position as an affirmative defense, which is another issue that this Court need not address. We note that the
appellants raised numerous affirmative defenses in their fourth amended original answer and counterclaim.