**Opinion filed September 8, 2022**



## In The

# Eleventh Court of Appeals

_____

### No. 11-22-00158-CV

_____

### THE CLIFFS PROPERTY OWNERS' ASSOCIATION, INC., Appellant

### V.

### DOUBLE DIAMOND, INC. AND THE CLIFFS HOTEL CORP., Appellees

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. C50111**

### M E M O R A N D U M   O P I N I O N

This is an appeal arising from a continuing dispute regarding the voting rights of the members of a property owners' association. Currently before us in this accelerated appeal is the trial court's order granting an application for temporary injunction in favor of Appellees: Double Diamond, Inc. (DDI) and The Cliffs Hotel Corp. (CHC). Appellant, The Cliffs Property Owners' Association, Inc. (POA), asks

that we dissolve the temporary injunction, contending, *inter alia*, that the trial court abused its discretion by entering an order granting injunctive relief that Appellees never requested and that alters, rather than preserves, the status quo. For the reasons that follow, we agree. We dissolve the temporary injunction and remand the cause to the trial court.

*Background*

On October 21, 2021, we issued an opinion resolving a prior dispute between these parties, among others. *See Dipprey v. Double Diamond, Inc.*, 637 S.W.3d 784 (Tex. App.—Eastland 2021, no pet.). In *Dipprey*, the parties disagreed over the required method for allocating votes to property-owning members of Appellant: The Cliffs Property Owners' Association, Inc. (POA). We held that owners of timeshare estates were "entitled to one vote per timeshare estate owned." *Id.* at 796. The governing instruments and principles of contract interpretation compelled this result, even though "timeshare estates" refer to "one-week increments," such that a person with only a transient presence on the property could possess as much voting power as a year-round resident. *Id.* at 794. The parties also disagreed over whether the "development period" for POA had ended. *Id.* at 798–800. This was important because, unless POA was in a development period, the only way to amend its governing instruments was by receiving sixty-seven percent of the total votes allocated—including all timeshare votes. *Id.* at 799; *see also* TEX. PROP. CODE ANN. § 209.0041(h) (West Supp. 2021). We held that the development period for POA had ended. *Id.* at 800. With this background in mind, we turn to the underlying facts of the present dispute that brings these parties before this court once again.

On January 1, 1997, DDI transferred property to Cliffs Lodging Company (CLC). A timeshare estate known as "the Villas" was located on, and conveyed with, that piece of transferred property. The parties disagree on whether the property known as "the Villas" is within POA's jurisdiction. Later that same year, CLC

2

merged into Appellee CHC; CHC became the owner of the Villas and therefore secured the rights to cast any votes corresponding to unsold Villas timeshare estates (i.e., one vote per one-week increment per unit within the building).

On January 5, 2019, long after the development period had ended,[1] the board of directors of POA voted to amend POA's declaration regarding its establishment and voting rights, purporting to divest timeshare estates of one vote per timeshare estate owned and, instead, to adopt a weighted voting system, whereby a property owner's voting power was a direct function of the amount of annual maintenance fees paid by the owner (i.e., a proxy for the amount of time the property owners actually spend on the property in a year).

An election of POA's board of directors was held on September 8, 2021. Shortly before the election, DDI and CHC sought, and the trial court granted, a temporary restraining order (TRO) enjoining POA from counting and tabulating votes in the 2021 election "in any other manner other than one (1) vote per lot and/or timeshare estate." POA hired Timothy & Devolt (T&D) to independently tabulate and certify votes cast in the 2021 election. T&D received a ballot from CHC purporting to cast 997 votes corresponding to the Villas timeshare estates, but T&D did not verify and certify those votes.

In their first amended petition and verified application for temporary injunction, DDI and CHC sought a declaratory judgment, asking the trial court to declare (1) that the disputed POA amendment, purporting to change POA's voting system from a one-for-one to a weighted system, is void; (2) that the Villas, because of its physical location on POA lots, did not require approval of POA's board of

---

[1]We explained in *Dipprey* that the development period ended once DDI conveyed the power to amend The Cliffs' declarations of covenants, conditions, and reservations (CCRs) to POA. 637 S.W.3d at 800. We also noted that DDI conveyed this power to POA when the CCRs were amended for the second of fourteen times—with the fourteenth amendment occurring on May 31, 2011. *Id.* at 793, 800. Hence, a purported amendment as late as 2019 falls well outside of the development period.

directors to become an enfranchised constituent of POA; and (3) that the owners of timeshare estates are entitled to have their votes counted—including CHC's 997 Villas votes—in the 2021 election. DDI and CHC also sought a temporary injunction, asking the trial court to preserve the status quo by enjoining POA's board of directors from taking any action "outside normal day-to-day operations" until the results of the 2021 election had been finally decided at trial.

In its first amended answer, POA denied that DDI and CHC had satisfied all of the conditions necessary to bring the Villas timeshare estates into the jurisdiction of POA, including securing the approval of POA's board of directors. In its second amended counterclaim, POA argued that the votes in the 2021 election were tabulated one-for-one, as mandated by the trial court's TRO, and that the only reason CHC's 997 Villas votes were not certified is because DDI and CHC never secured approval from POA's board of directors to bring the Villas timeshare estates within POA's jurisdiction. POA also argued, contrary to *Dipprey*, that a development period exception existed such that POA's board of directors were entitled to change the voting rights of POA's members without securing the sixty-seven percent of total allocated votes demanded by the Texas Property Code. *See* PROP. § 209.0041(h).

DDI and CHC filed a second proposed temporary injunction order, which the trial court signed on May 23, 2022. In the order, the trial court ordered POA "to count the Villas Votes as certified votes in the 2021 Annual Election" and "to seat the board of directors elected in the 2021 Annual Election as determined by adding the certified Villas Votes to the Election Results."

In its first issue, POA argues that the trial court abused its discretion by ordering POA to seat a new board of directors in accordance with the 2021 election results because DDI and CHC never pleaded for this relief. In its second issue, POA argues that the temporary injunction destroyed, rather than preserved, the status quo by compelling POA to hand over control of its board of directors—and, hence,

4

relinquish itself—to DDI and CHC: POA's adversaries in this litigation.[2] In its third issue, POA argues that the trial court abused its discretion in compelling POA to certify the 997 Villas votes because the validity of such votes is the ultimate issue to be decided at trial. In its fourth issue, POA argues that the trial court abused its discretion by failing to "balance the equities" between the parties. In its fifth issue, POA argues that the trial court abused its discretion in granting DDI and CHC a temporary injunction because they introduced no evidence to demonstrate that, in the absence of such an order, they would suffer imminent and irreparable injury.

We agree with POA as to its first and second issues. That is, we agree that the temporary injunction order granted relief that DDI and CHC did not request and that the order alters, rather than preserves, the status quo. Accordingly, we dissolve the temporary injunction order and remand this matter to the trial court for further proceedings. Because our holdings on POA's first two issues are dispositive of this appeal, we decline to address its remaining issues. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

*Discussion*

I. *The trial court abused its discretion by signing a temporary injunction order that granted greater relief than the applicants requested and that altered, rather than preserved, the status quo.*

A. *Standard of Review*

"In suits for temporary injunctions, the trial judge is endowed with broad discretion to grant or deny the injunction." *Janus Films, Inc. v. City of Fort Worth*, 358 S.W.2d 589 (Tex. 1962). Our review is limited to "whether the action of the trial judge in granting or denying the temporary injunction constitutes a clear abuse

---

[2]In their brief, POA also avers that, since entry of the temporary injunction, DDI and CHC "are using the order to assert that they now control the Board of Directors, including the right to direct this litigation."

of discretion." *Id.* A trial court abuses its discretion when it acts "without reference to guiding rules and principles such that the ruling is arbitrary or unreasonable." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020).

"A temporary injunction is an extraordinary remedy that does not issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Its "purpose is to preserve the status quo of the litagation's subject matter pending a trial on the merits." *Id.* The status quo is simply "the last, actual, peaceable, non-contested status which preceded the pending controversy." *Tex. Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425, 437 (Tex. App.—Austin 2018, pet. denied).

B. *Status Quo*

The ultimate issue to be decided at trial is whether the Villas is within POA's jurisdiction and, hence, whether CHC's 997 Villas votes are entitled to be certified in the 2021 election. DDI and CHC sued for a declaratory judgment that the Villas is within POA's jurisdiction, and POA counterclaimed for declaratory judgment that it is not. The *controversy* in this case—for purposes of identifying the last, actual, peaceable, non-contested status which preceded it—is the 2021 election for members of the board of directors of POA. *See id.*

During the last actual, peaceable, and non-contested state of affairs—i.e., prior to the contested 2021 election—POA was still under the direction of its incumbent board of directors. Indeed, a dispute over the results of the 2021 election is precisely what precipitated the underlying lawsuit and this appeal. To preserve the status quo, then, is to preserve the state of affairs that existed *before* the contested 2021 election. In other words, to preserve the status quo would have been to keep POA's board of directors as it was before the 2021 election until the dispute over that election had been finally decided at trial. To the contrary, the temporary injunction signed by the trial court orders POA to certify the contested Villas votes and seat a new board of directors.

6

Because the issue of whether the Villas is within POA's jurisdiction, and hence whether to certify the Villas votes in the 2021 election, is the very thing being contested in the parties' dueling actions for declaratory judgment, the trial court's temporary injunction order alters—rather than preserves—the status quo. The Texas Supreme Court's position is clear. The central question of the suit "'should be determined with a full trial on the merits' and injunctive relief can be used only to preserve 'the last peaceable *uncontested* status between the[] parties.'" *Clint Indep. School Dist. v. Marquez*, 487 S.W.3d 538, 555–56 (Tex. 2016) (alteration in original) (emphasis added) (quoting *In re Newton*, 146 S.W.3d 648, 651–52 (Tex. 2004)). Accordingly, we agree with POA that the trial court abused its discretion in signing the temporary injunction order.

C. *Excessive Relief*

An application for temporary injunction must be verified. TEX. R. CIV. P. 682. In their first amended petition and verified application for temporary injunction, DDI and CHC represented to the trial court, in relevant part, as follows:

> DDI and CHC . . . are entitled to: (a) vote one vote for each lot and/or timeshare estate they own; (b) not have their voting rights diminished by an unlawful amendment . . . ; and (c) have their votes counted in the election of the board of directors for [POA].
>
> . . . .
>
> Without entry of a temporary injunction: (a) requiring [POA] to announce the official results of the Annual Election . . . [and] (b) enjoining the Old Board from taking action outside normal day-to-day operations . . . until the Court confirms the tabulation and final results of the Annual Election, . . . DDI and CHC's voting rights will be severely diminished for which DDI and CHC do not have an adequate remedy at law and DDI and CHC will be irreparably harmed.

However, in signing the proposed order designed by DDI and CHC, the trial court ordered and enjoined POA to do a great deal more than merely refrain from taking

any action outside of POA's day-to-day operations. Specifically, the trial court ordered and enjoined POA to:

> a. . . . [C]ount the Villas Votes as certified votes in the 2021 Annual Election;
>
> b. . . . [S]eat the board of directors in the 2021 Annual Election as determined by adding the certified Villas Votes to the Election Results . . . [and]
>
> c. . . . [Refrain] from consulting, encouraging, or engaging or participating in another's undertaking of an action prohibited by this Order.

The relief granted was not requested in DDI and CHC's verified application for temporary injunction. Therefore, the trial court, by signing DDI and CHC's proposed order, granted greater relief than was prayed for in their verified pleadings.

The Texas Supreme Court has held that "a permanent injunction 'must not grant relief which is not prayed for nor be more comprehensive or restrictive than justified by the pleadings, the evidence, and the usages of equity.'" *Holubec v. Brandenberger*, 111 S.W.3d 32, 39 (Tex. 2003) (quoting 6 L. HAMILTON LOWE, TEXAS PRACTICE: REMEDIES § 244 at 237 (2d ed. 1973)). The same is applicable in the context of a temporary injunction. *Fairfield v. Stonehenge Ass'n Co.*, 678 S.W.2d 608, 611 (Tex. App.—Houston [14th Dist.] 1984, no writ) (stating that "the applicant must specify the precise relief sought" and that "a court is without jurisdiction to grant relief beyond and in addition to that particularly specified"); *see also* TEX. R. CIV. P. 682, 683. Thus, in addition to altering the status quo, we agree that the trial court abused its discretion by signing an order granting relief not prayed for by DDI and CHC or supported in their verified application for temporary injunction.

*This Court's Ruling*

We dissolve the temporary injunction issued by the trial court on May 23, 2022, and we remand this cause to the trial court for further proceedings consistent with this opinion.

W. BRUCE WILLIAMS

JUSTICE

September 8, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.