# Supreme Court of Texas

No. 23-0956

Nejla Kassandra Keyfli Lane,

*Appellant,*

v.

Commission for Lawyer Discipline,

*Appellee*

## On Appeal from the Board of Disciplinary Appeals

JUSTICE BUSBY, dissenting.

Petitioner Nejla Lane, a licensed Texas attorney, sent emails in 2017 to a federal judge in Illinois that: called the judge's rulings "outrageous" and "fraudulent," said the judge "ha[d] done [her] wrong" and was "in this to delay and deny justice for [her] client," exclaimed "[h]ow dare you do that to me?!", and threatened "[w]hat goes around comes around." The federal Northern District of Illinois and the Supreme Court of Illinois suspended Lane from their bars in January 2018 and January 2023 respectively, concluding that her conduct was intended to disrupt a tribunal and prejudicial to the administration of justice in violation of their disciplinary rules.

Lane reported her federal suspension and underlying emails to the Chief Disciplinary Counsel of respondent Texas Commission for Lawyer Discipline (CLD) in July 2020. She also reported her Illinois suspension in February 2023. The following month, the Chief Disciplinary Counsel sought to impose on Lane a reciprocal suspension from the State Bar of Texas. We are asked to decide whether this action was timely.

When an attorney licensed in Texas commits professional misconduct in another jurisdiction, our Disciplinary Rules of Professional Conduct (Disciplinary Rules) and Rules of Disciplinary Procedure (Procedural Rules) provide two pathways for discipline relevant here. *First*, if the CLD receives notice of conduct in another jurisdiction that constitutes professional misconduct under our Disciplinary Rules, the Chief Disciplinary Counsel handles the allegation as a "Grievance" using the multi-step process for ordinary discipline cases in Part II of the Procedural Rules. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 8.05(a); TEX. RULES DISCIPLINARY P. R. 1.06(R), 1.06(CC)(1), 2.10, 2.11(A), 2.12 *et seq*. *Second*, if the CLD receives notice of professional misconduct under our rules that occurs in another state *and* results in discipline in that state, the Chief Disciplinary Counsel files the discipline order and a petition for reciprocal discipline with a different tribunal using the abbreviated process outlined in Part IX of the Procedural Rules. *See* TEX. RULES DISCIPLINARY P. R. 1.06(CC)(2), 9.01-9.04.

The CLD disciplined Lane using the second pathway. The question before us is whether doing so violated the following rule, which

2

is entitled "Limitations": "No attorney may be disciplined for Professional Misconduct that occurred more than four years before the date on which a Grievance alleging the Professional Misconduct is received by the Chief Disciplinary Counsel." *Id.* R. 17.06(A).

I would hold that even if this limitations rule applies here and was not waived, as the Court concludes, Lane's reciprocal discipline complied with the rule. The predicate "Professional Misconduct" relevant under the second pathway was not complete and therefore did not occur until the Supreme Court of Illinois imposed discipline, which happened only one month before the Chief Disciplinary Counsel received the discipline order. But even if Lane had been disciplined under the first pathway, the result would be the same: the emails that the Court identifies as "Professional Misconduct" were sent in 2017 and the Chief Disciplinary Counsel received information about them from Lane fewer than four years later (July 2020), which constituted a "Grievance" under the Court's own reasoning. Because the Court reaches a different conclusion by mixing up the two pathways, and its reasoning leads to the absurd result that reciprocal discipline was barred by limitations before the Chief Disciplinary Counsel could ever have sought it, I respectfully dissent.

*      *      *

A defendant seeking judgment in its favor based on a limitations defense must "prove (1) when the cause of action accrued, and (2) [when] the plaintiff brought its suit," which must be not "later than the applicable number of years thereafter." *Draughon v. Johnson*, 631 S.W.3d 81, 89 (Tex. 2021). Here, Procedural Rule 17.06(A) defines the

3

two measuring points as (1) when the "Professional Misconduct . . . occurred" and (2) when "a Grievance alleging [that misconduct] is received by the Chief Disciplinary Counsel,"[1] which must be not later than "four years" thereafter. The Procedural Rules provide definitions of both "Professional Misconduct" and "Grievance" that help identify each of these points with precision.

At the relevant time, Procedural Rule 1.06(CC) provided that "'Professional Misconduct' includes," as pertinent here: (1) "Acts or omissions by an attorney . . . that violate one or more of the [Disciplinary Rules]"; and (2) "[a]ttorney conduct that occurs in another state . . . *and* results in the disciplining of an attorney in that other jurisdiction, if the conduct is Professional Misconduct under the [Disciplinary Rules]."[2] Because Disciplinary Rule 8.05(a) provides that a Texas lawyer "also may be disciplined in this state for conduct occurring in another jurisdiction . . . if it is professional misconduct under Rule 8.04," violating acts under the first prong of the "Professional Misconduct" definition can include acts in another jurisdiction, which are handled under Part II of the Procedural Rules. *See, e.g.*, TEX. RULES

---

[1] In describing the CLD's argument, the Court seems to suggest that the second measuring point is when "discipline [is] imposed." *Ante* at 15. That suggestion is contrary to the plain text of Procedural Rule 17.06(A). Elsewhere, however, the Court acknowledges that it is when a Grievance is "received." *Ante* at 20.

[2] TEX. RULES DISCIPLINARY P. R. 1.06(CC) (emphasis added). As the Court notes, this definition was amended in 2021 to include discipline imposed by a federal court or agency. *Ante* at 18 n.7; Sup. Ct. of Tex., *Final Approval and Adoption of Amendments to the Texas Disciplinary Rules of Professional Conduct and the Texas Rules of Disciplinary Procedure*, Misc. Docket No. 21-0961 (May 25, 2021).

DISCIPLINARY P. R. 2.11(a)-(b) (prescribing venue when "the acts or omissions complained of occurred wholly outside the State of Texas"). Violating acts under the second prong of the definition must also "result[] in . . . disciplin[e] . . . in that other jurisdiction," *id.* R. 1.06(CC)(2), and those acts are handled under Part IX of the Procedural Rules. *See, e.g., id.* R. 9.01 (providing procedures for reciprocal discipline when "an attorney licensed to practice law in Texas has been disciplined in another jurisdiction").

The Procedural Rules define "Grievance" as "a written statement, from whatever source, apparently intended to allege Professional Misconduct by a lawyer . . . received by the Office of Chief Disciplinary Counsel." *Id.* R. 1.06(R).[3] Thus, a "Grievance" must appear to allege the relevant type of "Professional Misconduct" for which discipline is being sought.

Here, the relevant type of "Professional Misconduct" for which the Chief Disciplinary Counsel sought to reciprocally discipline Lane falls under the second prong: "Attorney conduct that occurs in another state . . . *and* results in the disciplining of an attorney in that other jurisdiction, if the conduct is Professional Misconduct under the [Disciplinary Rules]." *Id.* R. 1.06(CC)(2) (emphasis added). Because the parts of this definition are joined by the conjunctive "and," the "Professional Misconduct . . . occurred" for limitations purposes when Lane both sent the emails that allegedly violated our Disciplinary Rules

---

[3] "Grievance" is a term used extensively in Part II but not at all in Part IX. Nonetheless, I assume for purposes of argument that the concept has relevance under Part IX as well. *Cf. ante* at 16-17.

*and* those emails resulted in her discipline in Illinois. *See* A<span>NTONIN</span> S<span>CALIA</span> & B<span>RYAN</span> A. G<span>ARNER</span>, R<span>EADING</span> L<span>AW</span>: T<span>HE</span> I<span>NTERPRETATION OF</span> L<span>EGAL</span> T<span>EXTS</span> 116 (2012) (explaining that "and" combines items so that all items listed are required). Thus, the first relevant point for Procedural Rule 17.06(A)'s limitations calculation is January 2023, when the Supreme Court of Illinois disciplined Lane. The second point is the "Grievance," which the Court holds was Lane's February 2023 report of her Illinois discipline. *See ante* at 16. Because these points are separated by fewer than four years, Rule 17.06(A) does not bar Lane's reciprocal discipline.

The Court attempts to avoid this plain-text conclusion by dismissing as "strained" the parts of the second prong of the "Professional Misconduct" definition that are relevant to the reciprocal discipline pathway in Part IX. *Ante* at 18. In particular, the Court disregards when the resulting discipline occurred, concluding that the only material fact for limitations purposes is "when the misconduct *occurred*." *Id.* at 19. In other words, the Court treats the second prong as if it reads no differently than the first prong of the "Professional Misconduct" definition, which focuses on the "[a]cts or omissions by an attorney . . . that violate" the Disciplinary Rules. T<span>EX</span>. R<span>ULES</span> D<span>ISCIPLINARY</span> P. R. 1.06(CC)(1). As explained above, the first prong already makes actionable any acts or omissions in another state that violate those rules. Thus, the Court's reading renders the second prong a nullity.

That cannot be correct; we must give effect to the different wording of these alternative definitions. And if the Court were correct

6

in disregarding the Illinois discipline, this disciplinary proceeding should have been brought using the full procedural safeguards offered by Part II of the Procedural Rules, which it was not. But even indulging the Court's framing that the relevant date of the Professional Misconduct is simply when the violation occurs, as if this were not really a reciprocal discipline case after all, Lane's discipline is not barred by limitations.

According to the Court, Lane's "Professional Misconduct . . . occurred" under Procedural Rule 17.06(A) when she sent the emails to the judge in 2017. *Ante* at 20. As discussed, the other relevant date for limitations purposes is specified later in the same sentence of the rule: when "a Grievance alleging *the* Professional Misconduct"—the very same Professional Misconduct that the rule just said occurred—"is received by the Chief Disciplinary Counsel." TEX. RULES DISCIPLINARY P. R. 17.06(A) (emphasis added). Applying the Court's own understanding of what constitutes a "Grievance," the Chief Disciplinary Counsel received allegations of Lane's misconduct from Lane herself in 2020. On July 29, 2020, Lane submitted an electronic contact form to the Chief Disciplinary Counsel disclosing her 2017 emails to the federal judge, the federal discipline, and the ongoing Illinois misconduct investigation. Because this was Lane's first submission that—in the Court's words—"plainly include[s] and incorporate[s] the allegations of Lane's misconduct," it "falls within the scope of Rule 1.06(R)'s definition of a Grievance." *Ante* at 16. Under this approach, too, the Professional Misconduct occurred fewer than four years before a Grievance alleging

7

that misconduct was received, so Procedural Rule 17.06(A) does not bar Lane's discipline.

The Court attempts to avoid this conclusion as well, but its reasoning is internally inconsistent. It observes that the "Professional Misconduct referred to in Rule 17.06(A)" was Lane's "sending three discrete emails" to the judge in 2017. *Ante* at 20. But it holds that the "Grievance alleging the Professional Misconduct was received"[4] when the Chief Disciplinary Counsel "received the Illinois Supreme Court's judgment of suspension in 2023," *id.*, despite its earlier statement that "Rule 17.06(A)'s focus . . . is on when the misconduct *occurred*," not upon the "resulting discipline." *Id.* at 19. In other words, the Court treats the "Professional Misconduct" as sending the emails for purposes of determining the occurrence date but as imposing the discipline for purposes of determining the grievance date.

This analysis improperly gives two different meanings to the term "Professional Misconduct" in the very same sentence of Procedural Rule 17.06(A). And it mixes up the separate procedural pathways for discipline based on out-of-state Professional Misconduct, using the misconduct at issue in Part II cases—the act or omission violating the Disciplinary Rules—to determine the occurrence date but the misconduct at issue in Part IX cases—the violating conduct *and* the resulting discipline—to determine the grievance date.

The Court attempts to wave this contradiction away by introducing the concept of an "operative" grievance on which the Chief

---

[4] TEX. RULES DISCIPLINARY P. R. 17.06(A).

Disciplinary Counsel takes action. *Id.* at 20-21. But Procedural Rule 17.06 contains no such concept. Instead, Parts II and IX identify the applicable grievance and when the Chief Disciplinary Counsel must act. For ordinary grievances, the Chief Disciplinary Counsel has thirty days after receipt to classify them and (generally) sixty days to investigate those classified as complaints. *See* TEX. RULES DISCIPLINARY P. R. 2.10, 2.12(A)(1). For reciprocal discipline under Part IX, the Chief Disciplinary Counsel must act "diligently" "[u]pon receipt of information that a [Texas-licensed] attorney . . . has been disciplined in another jurisdiction" to obtain a certified copy of the disciplinary order and file her petition. *Id.* R. 9.01. Here, she did so within one month of receiving information about Lane's Illinois suspension. Thus, the Court is simply wrong to suggest that its counter-textual reading of Procedural Rules 1.06(CC) and 17.06 is required to prevent the Chief Disciplinary Counsel from sitting on a grievance for decades. The Court's response also pretends that the Chief Disciplinary Counsel received the very same grievance in 2023 that she did in 2020, but that too is incorrect. Her petition under Part IX makes clear that just as Procedural Rule 9.01 required, she took diligent action after receiving notice of the Illinois judgment—the first information she received that provided a basis for reciprocal discipline.[5]

Finally, the Court's holding today leads to an absurd result: that Procedural Rule 17.06(A) bars the Chief Disciplinary Counsel from

---

[5] As previously discussed, our Procedural Rules did not provide for reciprocal discipline based on federal-court disciplinary orders at the time Lane was suspended by the federal court. *Ante* at 18 n.7; *see also supra* note 2.

9

performing her duty to pursue reciprocal discipline under Part IX before she could ever have done so. Procedural Rule 9.01 provides that "[u]pon receipt of information indicating that an attorney licensed to practice law in Texas has been disciplined in another jurisdiction . . . the Chief Disciplinary Counsel *shall*" obtain a copy of the order or judgment of discipline and file it with a petition requesting reciprocal discipline in Texas. *Id.* (emphasis added). Obviously, the Chief Disciplinary Counsel cannot carry out this duty before an order or judgment of discipline exists. But here, the Court holds that even though the Chief Disciplinary Counsel received the Illinois judgment of suspension within a month of its issuance and filed it promptly, she was too late because the misconduct—which alone cannot provide a basis for *reciprocal* discipline under Part IX—"occurred more than four years before." *Ante* at 20.

This result is fundamentally at odds with the nature of a statute of limitations. Texas courts, like other American courts, recognize a "strong background presumption" that "a cause of action does not become complete and present for limitations purposes until the plaintiff can file suit and obtain relief." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 811 (2024) (internal quotation marks omitted); *see, e.g.*, *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 593 (Tex. 2017); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2013). Although this "standard rule can be displaced such that the limitations period begins to run before a plaintiff can file a suit, [courts] will not infer such an odd result in the absence of any such indication in the text of the limitations period." *Corner Post*, 603 U.S.

10

at 811 (internal quotation marks omitted). There is no such language in Procedural Rule 17.06(A). Yet the Court transforms this rule entitled "Limitations" into a rule of repose,[6] imposing an absolute time limit on bringing a claim even before a cause of action accrues despite the lack of any textual support for that result.

I recognize, of course, that there is a fundamental policy question underlying today's decision. If the Chief Disciplinary Counsel receives an allegation that a Texas lawyer has committed out-of-state misconduct that violates our Disciplinary Rules, must she pursue that misconduct under Part II of the Procedural Rules? Or may she, in the interest of comity and conservation of scarce resources, await the results of ongoing disciplinary proceedings in the state where the professional misconduct occurred and then, if that state imposes discipline, ask a Texas tribunal to order reciprocal discipline under the abbreviated procedure in Part IX? I can see good arguments on both sides, and I favor amending our Procedural Rules to expressly resolve the question.

But nothing currently in the text of our Procedural Rules suggests that the limitations period of Procedural Rule 17.06(A) can force the Chief Disciplinary Counsel to pursue the Part II pathway and forfeit the Part IX pathway if disciplinary proceedings in the other state take too long. Today's opinion essentially amends our rules to impose that result without notice to the parties or the public, contrary to this Court's long-held view that "we do not revise our rules by opinion." *State Dep't*

---

[6] *See Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003); *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 263 (Tex. 1994) ("Statutes of repose differ from traditional limitations, of course, in that they potentially cut off a right of action before it accrues.").

11

*of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992).[7] Indeed, we may not do so because rule amendments require notice, an opportunity to comment, and—as to rules of disciplinary conduct and procedure—approval by members of the state bar in a referendum. *See* TEX. GOV'T CODE §§ 81.0876(a), 81.0878. None of those steps have been taken here.

At the very least, when we change the rules after the game has been played, we should give the parties an opportunity to play again under the new rules—for example, by using the Part II pathway to resolve this grievance. *See, e.g., Carowest Land, Ltd. v. City of New Braunfels*, 615 S.W.3d 156, 158-59 (Tex. 2020) (collecting cases). Because the Court does not, I respectfully dissent.

J. Brett Busby
Justice

**OPINION FILED:** June 6, 2025

---

[7] *See also Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 915 (Tex. 1992) ("[W]e are not free to disregard [the rule's] plain language. Nor should we revise the rule by opinion. The Legislature has provided that notice be given before rules amendments become effective. TEX. GOV'T CODE § 22.004. In addition, this Court has structured the rules-revision process to encourage advice and comment from the bench and bar, and from the public generally. . . . While those processes are at work, we adhere to the language of the rule and our consistent precedent.").