Alan **HENDRICKSON** and Duane Hendrickson, Appellants,

v.

Andrew John **SWYERS** and Margaret Lee Swyers, Appellees.

No. 04–99–00016–CV.

Court of Appeals of Texas, San Antonio.

Nov. 10, 1999.

Stephen A. Peyton, Boerne, for Appellant.

Walter P. Gray, San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

The issue in this case is whether the word "poultry" as used in the Texas Agriculture Code includes fighting cocks. Because we conclude that poultry does not include fighting cocks, we affirm the judgment of the trial court.

## Background

Andrew and Margaret Swyers own land that has a common boundary with land owned by Alan Hendrickson. Alan Hendrickson and his son, Duane Hendrickson, reside on Alan's land. The Hendricksons have raised fighting cocks on Alan's land for nearly ten years.

On May 7, 1998, the Swyers sued the Hendricksons for nuisance, complaining about the constant crowing and noxious odors caused by the fighting cocks. In response, the Hendricksons filed a general denial and asserted an affirmative claim for attorneys fees under section 251.004 of the Texas Agriculture Code (Code). On November 12, 1998, the Swyers, unable to bear the cost of the lawsuit, non-suited. The trial judge signed a judgment of non-suit and then conducted a bench trial on the merits of the Hendricksons' claim for attorneys fees. During the trial, Duane, Duane's sister, one of the Hendricksons' neighbors, and a friend of Duane, each testified that they eat eggs from the Hendricksons' hens. Duane's sister testified that she had used the fighting cocks to make chicken and rice before. At the conclusion of the trial, the trial judge denied the attorneys fees and the Hendricksons appealed.

The Hendricksons raise two issues in this appeal: first, whether the Code entitles them to attorneys fees, and secondly, whether the evidence supporting the trial court's findings of fact and conclusions of law are legally and factually sufficient. In response, the Swyers raise four cross-points that essentially argue that the Hendricksons are not entitled to attorneys fees because the Code does not apply in this case.

## Section 251.004 of the Code

Section 251.004 of the Code provides that:

A person who brings a nuisance action for damages or injunctive relief against an *agricultural operation* that has exist-

ed for one year or more prior to the date that the action is instituted or who violates the provisions of Subsection (a) of this section is liable to the agricultural operator for all costs and expenses incurred in defense of the action, including but not limited to attorney's fees, court costs, travel, and other related incidental expenses incurred in the defense.

TEX. AGRIC. CODE ANN. § 251.004 (Vernon 1982) (emphasis added). The Code defines "agricultural operation" in relevant part as including "raising or keeping livestock or *poultry.*" *Id.* § 251.002(1) (emphasis added). As a result, we must determine whether fighting cocks are included in the meaning of the term "poultry."

■■■ The goal of statutory construction is to give effect to the intent of the legislature. *Monsanto Co. v. Cornerstones Mun. Utility Dist.*, 865 S.W.2d 937, 939 (Tex.1993). Here, the legislature specified its intent in the Code itself. Section 251.001 provides:

> It is the policy of this state to conserve, protect, and encourage the development and improvement of its agricultural land *for the production of food* and other agricultural products. It is the purpose of this chapter to reduce the loss to the state of its agricultural resources by limiting the circumstances under which ag-

ricultural operations may be regulated or considered to be a nuisance.

TEX. AGRIC. CODE ANN. § 251.001 (Vernon 1982) (emphasis added). Clearly, this language is directed towards protecting farmers and ranchers who engage in activities that produce food. Notably, the Code uses the term "poultry" in defining "agricultural operation" in the section that immediately follows the purpose section. Logically then, the term "poultry" used in section 251.002 refers to fowl that is intended to be food. Statutory definitions of the term "poultry" support this interpretation.[1] Fighting cocks, however, are not raised for food. We know of no purpose for fighting cocks other than cock-fighting, an activity that is illegal in Texas. *See* TEX. PEN.CODE ANN. § 42.09 (Vernon Supp.1999); *Mejia v. State*, 681 S.W.2d 88, 90 (Tex.App.— Houston [14th Dist.] 1984, pet. ref'd). As a result, we determine that fighting cocks are not included within the meaning of "poultry" as used in section 251.002 of the Code.

We likewise find that fighting cocks are not included in section 251.001's use of the term "agricultural product." Although the Hendricksons analogize their efforts to raise fighting cocks to the efforts of a cattle rancher who raises and sells cattle, statutory definitions of "agricultural product" do not support this analogy.[2] Be-

---

1. The first definition of "poultry" is provided in title 2 of the Code where the legislature specified standard weights and measures for the state. Title 2 defines "poultry" as "turkeys, chickens, ducks, geese, guineas, squabs, and all other *domesticated* fowl." *Id.* § 13.034(e)(2) (Vernon 1995) (emphasis added). "Poultry" is defined again in title 6 where the legislature promulgated laws for controlling animal diseases and pest control. Title 6 defines "poultry" as "*domestic* fowl, including chickens, turkeys, and game birds." *Id.* § 168.001(5) (Vernon Supp.1999) (emphasis added). Both definitions characterize poultry as "domesticated" fowl. Likewise, the Texas Health and Safety Code, in regulating the distribution of meat and meat food products to consumers, defines poultry as "a live or dead *domesticated* bird." TEX. HEALTH & SAFETY CODE ANN. § 433.003(20) (Vernon 1992). Although all three definitions include animals that most people would characterize

as "poultry," notably the definitions do not use the term "game cock" or "fighting cock." Instead, each definition is aimed at the state's food supply.

2. The Code contains three definitions for the term "agricultural product." Section 52.002 defines "agricultural products" as including " horticultural, viticultural, forestry, dairy, livestock, *poultry*, and bee products and any farm and ranch product." TEX. AGRIC. CODE ANN. § 52.002(1) (emphasis added). Section 53.001 defines "agricultural product" as meaning "farm, orchard, or dairy products," specifically excluding livestock. *Id.* § 53.001(1). Section 58.002 defines "agricultural product" as "an agricultural, horticultural, viticultural, or vegetable product, bees, honey, fish or other seafood, planting seed, livestock, a livestock product, a forestry product, *poultry*, or a *poultry* product, either in its

cause we have determined that fighting cocks are not included within the meaning of poultry as used in section 251.002, or within the meaning of "agricultural product" as used in section 251.001, we conclude that the Hendricksons are not entitled to the protection provided by section 251.004. As a result, we overrule the first issue.

■ In their second issue, the Hendricksons challenge the legal and factual sufficiency of the trial judge's findings of fact and conclusions of law. Specifically, the Hendricksons contest Finding of Fact No. 7 which states:

The Plaintiffs specifically pled and raised the issues that fighting cocks are not raised for food or as an agriculture [sic] product and the fighting of cocks was illegal and the raising of them for that purpose placed fighting cocks outside the purpose and protection of Title 8, chapter 251, et seq., of the Agriculture Code, V.T.C.A.

In reviewing a finding of fact for legal sufficiency, the reviewing court considers only the evidence and inferences that support the challenged finding; the court disregards all contrary evidence and inferences. *See Zieben v. Platt,* 786 S.W.2d 797, 799 (Tex.App.—Houston [14 Dist] 1990, no pet.). To review the factual sufficiency of a finding, the court considers all of the evidence and sets aside the finding only if the evidence is so weak, or if the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Zieben,* 786 S.W.2d at 799. In this case, the Swyers did not plead the facts contained in Finding of Fact No. 7 in their original petition for injunctive relief. The Swyers, however, responded to the Hendricksons' claim for attorneys fees in a separate pleading. Therein, the Swyers contended that the Hendricksons were not entitled to attorneys fees under the Code because they did

not raise fighting cocks for the production of food or as an agricultural product, but instead raised the birds for the illegal purpose of fighting. The statements in this response are legally and factually sufficient to support Finding of Fact No. 7.

■ The Hendricksons also complain about the sufficiency of the following conclusions of law:

*Conclusion of Law No. 1:* The purpose of raising fighting cocks is for such birds to fight other fighting cocks and is not for food and other agricultural products as contemplated by the stated policy of Section 251.001 of Title 8 of the Agriculture Code V.T.C.A.

*Conclusion of Law No. 3:* Thus, even though fighting cocks are a bird, they are not poultry, by virtue of their purpose and lack of being a primary food source; thus, they do not come under the protection or other provisions of Title 8, Section 251.001, et seq. of the Agriculture Code, V.T.C.A.

*Conclusion of Law No. 4:* Defendants' activity of raising fighting cocks does not come under the protection of Title 8, Section 251.001, et seq. Agriculture Code, V.T.C.A.

*Conclusion of Law No. 5:* Not being under the protection of Title 8, Section 251.001, et seq. Agriculture Code, V.T.C.A., there is no statutory authorization applicable to defendants raising of fighting cocks to permit the awarding of attorney's fees, therefore no attorney's fees are awarded to defendants.

When reviewing conclusions of law, the court of appeals reviews a trial court's legal conclusions *de novo* as a legal question, and follows the trial court's conclusions unless erroneous as a matter of law. *See Hitzelberger v. Samedan Oil Corp.,* 948 S.W.2d 497, 503 (Tex.App.—Waco 1997, pet. denied). In this case, we explained the law supporting each of the

natural or processed state, that has been produced, processed, or otherwise had value added to it in this state." *Id.* § 58.002(2)

(emphasis added). Notably, two of the three definitions use the term "poultry."

conclusions reached by the trial court in our discussion of the Hendricksons' first issue, and why the trial courts conclusions of law are correct. Consequently, we overrule the Hendricksons' second issue.

Having overruled both of the Hendricksons' issues, we affirm the judgment of the trial court.