NUMBER 13-05-120-CV

COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG






CAL-C0 GRAIN COMPANY, INC.,

WARREN WHATLEY, 

HAROLD L. EVANS,

AND LESTER FRAZIER Appellants,


v.


RICHARD WHATLEY AND 

WIFE, GLENDA WHATLEY, Appellees.

 





On appeal from the County Court at Law

of Calhoun County, Texas.






DISSENTING MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Rodriguez and Castillo

Dissenting Opinion by Justice Castillo

 

 I respectfully disagree with the majority in two respects. In particular, appellant
Cal-Co has not shown that (1) the trial court's enforcing the parties' compromise
settlement agreement on the question of attorney fees is reversible error, and, (2) it
is entitled to attorney fees because it is engaged in an "agricultural operation" as that
term is statutorily defined. Thus, I dissent. 

Enforcement of the Parties' Compromise Settlement Agreement

 Appellees Richard and Glenda Whatley sued to enforce their compromise
settlement agreement with Cal-Co. The trial court expressly found that the agreement
does not make provisions concerning an award of attorney fees. The record supports
the finding. The trial court concluded that the agreement controlled the disposition of
the attorney fee award and, implicitly because of the agreement's silence, rejected the
jury's award of attorney fees.

 We review a trial court's conclusions of law de novo and uphold them unless
they are erroneous as a matter of law. See State v. Heal, 917 S.W.2d 6, 9 (Tex.
1999); Barrera v. Hondo Creek Cattle Co., 132 S.W.3d 544, 547 (Tex. App.-Corpus
Christi, no pet.). Attorney fees are not recoverable unless such a recovery is provided
by statute or a contract between the parties. (1)
 Travelers Indem. Co. v. Mayfield, 923
S.W.2d 590, 593 (Tex. 1996). This case involves a compromise settlement
agreement. The parties' compromise must be made in good faith and the instruments
evidencing same must not be executed to cloak the real transaction. See Finn v.
Alexander, 163 S.W.2d 714, 716 (Tex. 1942). 

 The jury's award of attorney fees finds no support in the parties' agreement. 
Because the settlement agreement is silent with respect to attorney fees and the
judgment is consistent with the agreement, I would hold that Cal-Co has not
demonstrated that the trial court's rejection of the attorney fee award is erroneous as
a matter of law. See Heal, 917 S.W.2d at 9; Hondo Creek, 132 S.W.3d at 547. 
Further, Cal-Co has not demonstrated that the ruling constitutes reversible error. See
Tex. R. App. P. 44.1(a)(1). 

"Agricultural Operation" 

 Even so, Cal-Co bases its claim to attorney fees on the Right to Farm Act. (2) See
Act of 1981, 67th Leg., R.S., ch. 693, § 21, 1981 Tex. Gen. Laws 2595 (amended
2005) (currently codified at Tex. Agric. Code Ann. § 251.001 et seq. (Vernon 2004
& Supp. 2006)). Implicitly, the majority concludes that testimony that Cal-Co is "a
part of the process of producing livestock feed" and "a part of that process of
producing crops for animals-for animal food" suffices to prove Cal-Co "constitutes an
agricultural operation" as that term is statutorily defined. For the reasons stated
below, I would hold that the Right to Farm Act does not contemplate that a private,
commercial enterprise involving the storage or distribution of grain is an "agricultural
operation" under the terms of the Act. 

 In order "to conserve, protect, and encourage the development and improvement
of agricultural land for the production of food and other agricultural products," the
Legislature passed the Right to Farm Act in 1981 "limiting the circumstances under
which agricultural operations may be regulated or considered to be a nuisance." Tex.
Agric. Code Ann. § 251.001. The Act defines "agricultural operation" in relevant part
as including "producing crops for human food, animal feed." Id. § 251.002(1). Thus,
we must discern whether storing or distributing grain is included in the meaning of the
term "producing crops for . . . animal feed" under the Act. See id. 

 Because the issue presented for review is one of statutory construction,
involving purely legal determinations, the proper standard of review is de novo. See
Tex. Dep't of Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002); Walker v.
Packer, 827 S.W.2d 833, 840 (Tex. 1992). It is a rule of statutory construction that
every word of a statute must be presumed to have been used for a purpose. Cameron
v. Terrell & Grant, Inc., 618 S.W.2d 535, 540 (Tex. 1981); Allison v. Allison, 3
S.W.3d 211, 214 (Tex. App.-Corpus Christi 1999, no pet.). Every word excluded
from a statute must also be presumed to have been excluded for a purpose. Cameron,
618 S.W.2d at 540; Wood v. Victoria Bank & Trust Co., N.A., 170 S.W.3d 885, 890
(Tex. App.-Corpus Christi 2005, pet. denied) (op. on reh'g). Only when it is
necessary to give effect to the clear legislative intent can we insert additional words
or requirements into a statutory provision. Cameron, 618 S.W.2d at 540. Further,
words that are not defined by a statute will be given their plain and ordinary meaning. (3) 
See Tex. Gov't Code Ann. § 311.011 (Vernon 2005) ("Words and phrases shall be
read in context and construed according to the rules of grammar and common
usage."). We may consult dictionary definitions when ascertaining those meanings. 
See Morgan Bldgs. & Spas v. Turn-Key Leasing, 97 S.W.3d 871, 880 n. 16 (Tex.
App.-Dallas 2003, pet. denied). We must enforce the plain meaning of an
unambiguous statute. Tune v. Tex. Dep't of Pub. Safety, 23 S.W.3d 358, 363 (Tex.
2000); St. Luke's Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997)
(holding that we interpret a statute that is clear and unambiguous by looking at the
plain meaning of the statute's words). 

 Webster's defines the verb "produce" as to "create," "make," or "manufacture,"
among other similar definitions that connote, in the context of farming operations,
functions that do not include storage or distribution of crops. See Webster's New
Twentieth Century Dictionary 743 (2nd ed. 1979). Thus, the plain meaning of the
dictionary's definition is that "producing crops for . . . animal feed" entails, among
others, planting, growing, and harvesting crops for animal feed. See id. Consequently,
the majority's conclusion that Cal-Co's storage or distribution of crops is engaged in
an "agricultural operation" because it is "part of the process of producing livestock
feed" or "part of the process of producing crops for animals" finds no support in the
plain meaning of the statute. See Tex. Agric. Code Ann. § 251.002(1). The Act was
designed in furtherance of the right to farm. See id. § 251.001; Hendrickson v.
Swyers, 9 S.W.3d 298, 300 (Tex. App.-San Antonio 1999, pet. denied) ("Clearly,
this language is directed toward protecting farmers and ranchers who engage in
activities that produce food."). 

 We must enforce the plain meaning of its terms. See Tune, 23 S.W.3d at 363;
St. Luke's Episcopal Hosp., 952 S.W.2d at 505. A commercial storage or distribution
facility for grain is not within the ambit of the right to farm. Tex. Agric. Code Ann. §
251.001. Nothing in the plain meaning of the term "producing crops for . . . animal
feed" in the Act connotes protection of non-agricultural storage or distribution facilities
from nuisance actions based on conditions or circumstances existing for more than a
year before suit. See id. Thus, Cal-Co's proffered interpretation is not within the
breadth of the Act. Further, because the Legislature did not include storage or
distribution within the Act's terms, we must presume the terms were excluded for a
purpose. See Cameron, 618 S.W.2d at 540; Wood, 170 S.W.3d at 890; Allison, 3
S.W.3d at 214. 

 Thus, even assuming the trial court erred in concluding that the parties'
agreement prevailed over the Act and, even construing the agreement and the Act
together as Cal-Co urges, Cal-Co is not engaged in an "agricultural operation." Rather,
as the evidence demonstrates, it is engaged in the storage or distribution of the
product of an agricultural operation. Consequently, Cal-Co is not entitled to statutory
attorney fees under the Act. Id. § 251.004(b).

Conclusion

 The trial court's conclusion that attorney fees are not encompassed in the
parties' compromise settlement agreement finds support in the record and as a matter
of law. Cal-Co's theory of recovery of attorney fees under the Right to Farm Act finds
no basis in law or in fact. Accordingly, I would affirm the trial court's take-nothing
attorney fee judgment in favor of the Whatleys. 


 ERRLINDA CASTILLO

 Justice


Dissenting Memorandum Opinion delivered and filed 

on the 24th day of August, 2006. 





1. Parties to a contract may provide by agreement that the prevailing party is entitled to recover
attorney fees. See Weng Enters. v. Embassy World Travel, 837 S.W.2d 217, 222-23 (Tex. App.-
Houston [1st Dist.] 1992, no writ). The "prevailing party" is the party who successfully prosecutes or
defends the action on the main issue. Id. at 223.

2. A person who brings a nuisance action for damages or injunctive relief against an agricultural
operation that has existed for one year or more prior to the date that the action is instituted or who
violates the provisions of subsection (a) of this section is liable to the agricultural operator for all costs
and expenses incurred in defense of the action, including but not limited to attorney fees, court costs,
travel, and other related incidental expenses incurred in the defense. See Tex. Agric. Code Ann. §
251.004(b) (Vernon 2004); Hendrickson v. Swyers, 9 S.W.3d 298, 299-300 (Tex. App.-San Antonio
1999, pet. denied). 
3. Texas courts are to consider, among other factors, the language of the statute, legislative
history, the nature and object to be obtained, and the consequences that would follow from alternative
constructions, even when a statute is not ambiguous on its face. Helena Chem. Co. v. Wilkins, 47
S.W.3d 486, 493 (Tex. 2001); Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 280 (Tex. 1994).