

# NUMBER 13-14-00163-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CIMARRON ENGINEERING, LLC,                      Appellant,

**v.**

MIRAMAR PETROLEUM, INC.,                      Appellee.

### On appeal from the 267th District Court of Jackson County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez, and Justices Perkes and Longoria
### Memorandum Opinion by Justice Longoria

By two issues, Cimarron Engineering, LLC appeals the trial court's order denying its motion to dismiss Miramar Petroleum, Inc.'s suit for damages. *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(f) (West, Westlaw through 2013 3d C.S.) ("An order . . .

denying a motion for dismissal is immediately appealable as an interlocutory appeal."). First, Cimarron contends that the trial court abused its discretion by denying its motion to dismiss because Miramar failed to file a certificate of merit as required by Chapter 150 of the Texas Civil Practice and Remedies Code. *See id.* § 150.002(a) (requiring plaintiff to file an affidavit of a licensed professional engineer with its complaint). Second, Cimarron contends that the trial court erred in concluding that it waived its right to dismissal. *See id.* § 150.002(e) ("The plaintiff's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant. This dismissal may be with prejudice."). For the reasons set forth below, we conclude that the trial court abused its discretion by denying Cimarron's motion to dismiss. Accordingly, we reverse the trial court's order and remand the case to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

This lawsuit concerns damages to an oil and gas well known as Sartwelle #1, which is owned by Miramar and located in Jackson County, Texas. Miramar alleges that the well was damaged due to a blowout that occurred during drilling operations on April 15, 2013.

In its live petition, Miramar alleges that Cimarron is in the business of supplying individuals with appropriate training, experience, and knowledge to supervise and direct drilling operations to access valuable petroleum reserves. According to Miramar, it hired Cimarron to supervise and direct drilling operations at Sartwelle #1. Among other things, Miramar alleges that Cimarron agreed to supervise a "mud engineer" and "experienced well operators" supplied and employed by two other defendants named in this suit who

2

are not parties to this appeal, American Petroleum Drilling Fluids, Inc. ("ADF") and Nicklos Drilling Company ("Nicklos"). Miramar allegedly hired ADF to manage the mud and other drilling fluids required for the well. Miramar allegedly hired Nicklos to drill the well.

Miramar alleges that Cimarron provided at least three different "company men" who lived on the well site and issued daily reports to Cimarron's home office, where Cimarron supervised their work. Miramar alleges that Cimarron "had a company man on the site who should have been monitoring the mud, the pressures in the well, and the drilling." Miramar alleges further that "Cimarron should have recognized that the well was on the verge of blowing out and that the mud weight was insufficient." According to Miramar, Cimarron "caused or contributed to the blowout."

Based on the foregoing, Miramar asserts two causes of action against Cimarron. First, Miramar asserts a cause of action for breach of contract, alleging that Cimarron "had agreed to supervise and direct operations at the well," subsequently "breached the contract," and thereby "caused Miramar injury." Second, Miramar asserts a cause of action for negligent supervision, alleging that "Cimarron had a duty to Miramar to supervise its employees in a reasonable manner" and "breached this duty by sending out an employee without adequate supervision." Miramar alleges further that "[b]ecause of the lack of supervision the well blew out . . . and [s]aid blowout caused Miramar to suffer damages."

Miramar did not file an affidavit or certificate of merit with its original petition or with its first or second amended petitions. Cimarron answered the suit, propounded written discovery, and then filed a motion to dismiss based on Miramar's failure to file a certificate of merit with its petition. *See id.* § 150.002(e).

3

In its response, Miramar argued that it was not required to file a certificate of merit because the suit did not arise out of the provision of professional services by a licensed or registered professional. *See id.* § 150.002(a). In the alternative, Miramar argued that Cimarron had waived its right to dismissal by answering the suit and propounding written discovery.

In its reply, Cimarron argued that it is an engineering firm and that Miramar's claims were therefore subject to Chapter 150 because they involve professional services. In support of this contention, Cimarron attached to its reply the affidavit of James L. Geryk, P.E. stating that he has been a licensed engineer in the State of Texas since 1990 and has practiced as an engineer continually since that time. Geryk also stated that he is "the owner, president, and employee of Cimarron Engineering, LLC." According to Cimarron, "[t]here is, or should be, no dispute that Mr. Geryk is a licensed professional as envisioned by the statute, and that, as a consequence, his firm is likewise a licensed professional as considered by § 150.001(1-a)." *See id.* § 150.001(1-a) (West, Westlaw through 2013 3d C.S.) ("'Licensed or registered professional' means a . . . licensed professional engineer . . . or any firm in which such licensed or registered professional practices . . . .").

Cimarron also argued that "[w]ithout question, the work alleged to be performed by Cimarron involve[d] professional services." *See* TEX. OCC. CODE ANN. § 1001.003(b) (West, Westlaw through 2013 3d C.S.) ("Practice of Engineering"). According to Cimarron, the alleged failure to properly monitor the well, monitor the pressures in the well, and calculate the weights in order to maintain the stability of the well "unambiguously" involved "engineering training, education, and experience" and the application of "special knowledge or judgment of the mathematical, physical, or

4

engineering sciences." Cimarron also addressed Miramar's argument that it was suing Cimarron, not for the failure to provide professional services, but for the failure to supervise its employee. According to Cimarron, this distinction makes no difference under Chapter 150 because Miramar's claims arise out of the provision of professional services to which Chapter 150 applies and for which a certificate of merit is required.

With respect to the issue of waiver, Cimarron argued that it did not waive its right to dismissal by filing an answer or by propounding written discovery. *See Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, No. 12-0251, 2014 WL 1258307, at *9 (Tex. Mar. 28, 2014) ("Attempting to learn more about the case in which one is a party does not demonstrate an intent to waive the right to move for dismissal. . . . Filing an answer is similarly inconsequential in the analysis."); *Ustanik v. Nortex Found. Designs, Inc.*, 320 S.W.3d 409, 414 (Tex. App.—Waco 2010, pet. denied) ("[P]articipation in discovery and filing motions for summary judgment do not necessarily demonstrate an intent to waive the right to move for a dismissal.").

In its sur-reply, Miramar relied extensively on the decision of the Fort Worth Court of Appeals in *RCS Enterprises v. Hilton*, No. 02-12-00233-CV, 2013 WL 6795390 (Tex. App.—Fort Worth Dec. 19, 2013, no pet.) (mem. op.). In its memorandum opinion, the Fort Worth Court of Appeals explained in relevant part as follows:

> [S]ection 150.002 does not apply generally to all claims of any kind against a defendant holding one of the professional licenses included within section 150.002. If a defendant happens to be a licensed engineer and provided some sort of service to the plaintiff, but not a professional engineering service, then a claim that arises out of the defendant's performance of that service does not fall within the statute's application. For example, an engineer who has a side business of mowing lawns could be sued for an act done in the course of providing those lawn care services, and no certificate of merit would need to be provided.

5

*Id.* at *3 (footnote omitted).

In its sur-reply, Miramar argued that "[e]xactly the same thing is true in the present case. Just because Geryk is an engineer and his firm was hired to provide a service does not make it an engineering service." According to Miramar, "It is clear that Cimarron happens to be an engineering firm and provided some sort of service to Miramar, but not a professional engineering service, thus a claim that arises out of Cimarron's performance of that service does not fall within the statute." In support of this contention, Miramar cited to Cimarron's answer to certain written discovery. Miramar's interrogatory No. 3 asked Cimarron to "describe in detail what professional engineering consulting services James Geryk performed." In its answer, Cimarron stated that "[t]o the extent this interrogatory refers to any work that Mr. Geryk may have performed in connection with the well made the basis of this lawsuit, none."

On March 11, 2014, the trial court entered its written order denying Cimarron's motion to dismiss. The trial court did not state the basis for its ruling. Cimarron subsequently filed this appeal.

## II. APPLICABLE LAW

"The certificate of merit statute applies to actions for damages arising out of 'the provision of professional services by a licensed or registered professional . . . .'" *Crosstex Energy Servs.,* 2014 WL 1258307, at *2 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a)). In this context, a "licensed or registered professional" includes "a licensed professional engineer . . . or any firm in which such licensed or registered professional practices . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 150.001(1-a). If a plaintiff's claim for damages implicates the special knowledge and training of an engineer, it is a claim for

6

damages arising out of the provision of professional services. *See Pelco Constr., Inc. v. Dannenbaum Eng'g Corp*., 404 S.W.3d 48, 53 (Tex. App.—Houston [1st Dist.] 2013, no pet.). In such cases, "[a] plaintiff 'shall' file an affidavit of a qualified third party in the same profession; the affidavit must substantiate the plaintiff's claim on each theory of recovery." *Crosstex Energy Servs.,* 2014 WL 1258307, at *2 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a), (b)). Failure to file this affidavit or certificate of merit results in dismissal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(e). This dismissal may be with or without prejudice. *See id.*

## III. STANDARD OF REVIEW

We review a trial court's ruling on a motion to dismiss a case for failure to comply with Section 150.002 for an abuse of discretion. *See Ustanik*, 320 S.W.3d at 412. "A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). If resolution of the issue requires us to construe statutory language, we review statutory construction de novo. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). "Once we determine the proper construction of the statute, we determine whether the trial court abused its discretion in the manner in which it applied the statute to the instant case." *TDIndustries, Inc. v. Rivera*, 339 S.W.3d 749, 752 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

## IV. DISCUSSION

The threshold issue in this case is whether Miramar's claims arise "out of the provision of professional services" by Cimarron. TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a). Cimarron is a "licensed or registered professional" because it is the business

7

entity in which Geryk, a licensed professional engineer, practices. *See id.* § 150.001(1-a). Furthermore, Miramar's claims arise out of Cimarron's provision of services; however, the parties dispute whether those services were "professional services." *Id.* § 150.002(a).

"To determine whether [Miramar's] claims arise out of the provision of professional engineering services [by Cimarron] within the meaning of Section 150.002(a), we look to the definition of the practice of engineering in the Texas Occupations Code." *TDIndustries*, 339 S.W.3d at 754. The Texas Occupations Code defines the "practice of engineering" to mean "the performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work." TEX. OCC. CODE ANN. § 1001.003(b).

In this case, Miramar has asserted claims against Cimarron for breach of contract and negligent supervision based on Cimarron's alleged conduct in inadequately and improperly supervising its employees, ADF's employees, including a "mud engineer," and Nicklos' employees, monitoring Miramar's well, monitoring the pressures in the well, monitoring the drilling, and calculating the weights to maintain the stability of the well and prevent a blowout. Miramar alleges that "Cimarron should have recognized that the well was on the verge of blowing out and that the mud weight was insufficient." We conclude that Miramar's allegations implicate the practice of engineering as defined by the Texas Occupations Code. *See* TEX. OCC. CODE ANN. § 1001.003(b). Specifically, the allegations fit within the following description of the practice of engineering set forth in the Texas Occupations Code:

8

The practice of engineering includes . . . a service, design, analysis, or other work performed for a public or private entity in connection with a utility, structure, building, machine, equipment, process, system, work, project, or industrial or consumer product or equipment of a mechanical, electrical, electronic, chemical, hydraulic, pneumatic, geotechnical, or thermal nature . . . [and] any other professional service necessary for the planning, progress, or completion of an engineering service.

*Id.* § 1001.003(b)(10), (12). Based on the foregoing, we conclude that Miramar's claims arise out of Cimarron's provision of professional services that required "special knowledge or judgment of the mathematical, physical or engineering sciences." *Id.* § 1001.003(b). Accordingly, Miramar was required to file a certificate of merit with its petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a).

Furthermore, we conclude that Cimarron did not waive its right to seek dismissal by filing an answer or propounding written discovery. *See Crosstex Energy Servs.*, 2014 WL 1258307, at *9 ("Attempting to learn more about the case in which one is a party [through discovery] does not demonstrate an intent to waive the right to move for dismissal. . . . Filing an answer is similarly inconsequential in the analysis."). Therefore, the trial court abused its discretion by denying Cimarron's motion to dismiss. Accordingly, we sustain Cimarron's first and second issues.

Finally, having determined that Chapter 150 requires dismissal of Miramar's claims against Cimarron, we are faced with the issue of whether the dismissal should be with or without prejudice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(e) (stating that "dismissal may be with prejudice"). The Texas Supreme Court has characterized the granting of dismissal with prejudice as being "discretionary," stating that in exercising its discretion in this regard, the trial court must be guided by the "broader purposes of the statute." *See CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 390

9

S.W.3d 299, 301 (Tex. 2013) (per curiam). The Supreme Court has explained that "dismissal [with prejudice] is a sanction . . . to deter meritless claims and bring them quickly to an end." *Id.*

In this case, because the trial court denied Cimarron's motion to dismiss, it did not decide the prejudice issue. Accordingly, we believe it is appropriate to remand the case to the trial court for a determination of whether the dismissal of Miramar's claims against Cimarron should be with or without prejudice. *See id.* (declining to decide in first instance whether dismissal of plaintiff's suit for failure to file adequate certificate of merit should be with or without prejudice); *Garza v. Carmona*, 390 S.W.3d 391, 398 (Tex. App.—Corpus Christi 2012, no pet.) (reversing trial court's order denying motion to dismiss and remanding case to trial court to determine whether dismissal should be with or without prejudice to refiling); *Sharp Eng'g v. Luis*, 321 S.W.3d 748, 752–53 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (same); *see also CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, No. 02-11-00160-CV, 2013 WL 3968021, at *1 (Tex. App.—Fort Worth Aug. 1, 2013, no pet.) (mem. op. on remand) (same).

## V. Conclusion

We reverse the trial court's order denying Cimarron's motion to dismiss and remand the case to the trial court with instructions for the trial court to enter an order dismissing Miramar's claims against Cimarron and to determine whether the dismissal should be with or without prejudice.

NORA L. LONGORIA
Justice

Delivered and filed the
26th day of June, 2014.

10